IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD RUNDGREN and MICHELE COLLEEN RUNDGREN, individually and as Trustees respectively of the Todd Rundgren Revocable Trust, dated November 1, 2005 and the Michele C. Rundgren Revocable Trust, dated October 6, 2005,<br><br>  Plaintiffs,<br><br>  vs.<br><br>WASHINGTON MUTUAL BANK, F.A., a Federal Savings Bank; JP MORGAN CHASE, N.A., a Delaware corporation; and DOES 1-30,<br><br>  Defendants.<br>_____ | CIVIL NO. 09-00495 JMS/KSC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JP MORGAN CHASE, N.A.'S MOTION TO DISMISS, DOC. NO. 18 |

**<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JP MORGAN CHASE, N.A.'S MOTION TO DISMISS, DOC. NO. 18</u>**[1]

**I. <u>INTRODUCTION</u>**

On August 26, 2009, Plaintiffs Todd and Michele Colleen Rundgren, individually and as trustees respectively of the Todd Rundgren Revocable Trust, dated November 1, 2005 and the Michele C. Rundgren Revocable Trust, dated October 6, 2005 ("Plaintiffs") filed a Complaint alleging Truth in Lending Act

---

[1] Chase originally styled its motion as one for summary judgment, but at the hearing, both parties agreed it should be treated as a Rule 12(b) motion to dismiss. The court therefore treats Chase's Motion as a Rule 12(b)(6) motion to dismiss.

("TILA"), 15 U.S.C. § 1601 *et seq.* and other related violations against Defendants Washington Mutual Bank F.A. ("WaMu") and JP Morgan Chase, N.A. ("Chase") stemming from mortgage transactions and a subsequent notice of nonjudicial foreclosure concerning real property located at 4170 Wailapa Road, No. 1, Kilauea, Hawaii 96754 (the "subject property").

Currently before the court is Chase's Motion to Dismiss in which it argues that Plaintiffs have failed to state a claim against Chase because Chase is not liable for any acts and/or omissions by WaMu. Based on the following, the court GRANTS in part and DENIES in part Chase's Motion to Dismiss.

## II.  BACKGROUND

**A.    Factual Background**

As alleged in the Complaint, on February 23, 2005, Plaintiffs secured a first mortgage on the subject property from Countrywide Home Loans, Inc. in the amount of $966,000. Compl. ¶ 8.

On February 25, 2008, Plaintiffs refinanced the mortgage for $3,000,000 with WaMu. *Id.* Plaintiffs assert that WaMu's representatives and agents tricked them into signing a false loan application, secured a false appraisal as to the value of the subject property, and misrepresented to Plaintiffs the terms of the Note pertaining to the refinancing loan. *Id.* ¶¶ 9-10. WaMu also allegedly

allowed a usurious junior lien in favor of WaMu's representatives to be partially paid off and failed to inform Plaintiffs of the alternatives, causing Plaintiffs to suffer a prepayment payoff penalty on the prior Countrywide first mortgage. *Id.* ¶ 11. Plaintiffs further assert that at closing, they were not given adequate time to read and understand the terms of the documents, and did not receive two accurate and complete TILA notices of the right to cancel with respect to the refinancing loan, good faith estimates, or complete TILA disclosures. *Id.* ¶¶ 12-14.

After this refinancing loan closed, Plaintiffs allegedly made numerous requests for loan documents pursuant to the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 - 2617, but did not receive them. *Id.* ¶ 15.

On September 25, 2008, the U.S. Office of Thrift Supervision seized WaMu from Washington Mutual, Inc. and placed it into receivership of the Federal Deposit Insurance Corporation (the "FDIC") for the purpose of liquidation. That same day, the FDIC sold the assets and certain liabilities to Chase pursuant to a Purchase and Assumption Agreement ("P&A Agreement"). The Agreement provides, in relevant part:

> 2.5   Borrower Claims.
>  Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to

> judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extrajudicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

Chase Ex. B ¶ 2.5.[2]

One of the assets sold to Chase through the P&A Agreement was Plaintiffs' mortgage -- on July 8, 2009, Chase notified Plaintiffs that Chase was the current assignee of the mortgage, that the sums secured by the mortgage were being accelerated, and that a non-judicial foreclosure auction sale of the subject property would occur on August 26, 2009. Compl. ¶ 16. In response, Plaintiffs' attorney notified Chase that Plaintiff cancelled the refinancing loan, Note, and mortgage and rescinded the loan transaction as null and void. *Id.* ¶ 17.

**B.    Procedural Background**

On August 26, 2009, Plaintiffs filed their Complaint in the First

---

[2] The parties agree that the court may take judicial notice of the P&A Agreement. The court finds that judicial notice of the P&A Agreement is appropriate -- it is readily available on the FDIC's website and "judicial notice may be taken of documents available on government websites." *Jarvis v. JP Morgan Chase Bank, N.A.*, 2010 WL 2927276, at *1 (C.D. Cal. July 23, 2010); *see also Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009) (taking judicial notice of the same P&A Agreement that is at issue in this case).

Circuit Court of the State of Hawaii, and Chase subsequently removed this action to this court. The Complaint alleges claims against Chase titled (1) Declaratory Judgment Re: Prevention of and Wrongful Nonjudicial Foreclosure; (2) Declaratory Judgment Re: Fraud and Rescission and Common Law Damages; (3) Declaratory Judgment Re: Chapter 480 [Hawaii Revised Statute ("HRS")] Rescission and Treble Damages; (4) Injunctive Relief; (5) Declaratory Judgment Re: TILA and RESPA Statutory Damages; and (6) Punitive Damages.

On September 6, 2010, Chase filed its Motion. Plaintiffs filed an Opposition on November 2, 2010, and Chase filed a Reply on November 9, 2010. On November 16, 2010, the court filed an entering order raising whether the court has subject matter jurisdiction over Plaintiffs' claims. On November 21, 2010, Plaintiffs filed a supplement on jurisdiction. A hearing was held on November 23, 2010. Plaintiffs filed a supplemental memorandum on November 24, 2010.

### III. STANDARDS OF REVIEW

A.   **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction. The court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of

5

a case." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

"[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined to the four corners of the complaint -- it may consider facts and need *not* assume the truthfulness of the complaint[,]" and the existence of disputed material facts will not preclude the court from evaluating the existence of subject matter jurisdiction. *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *see also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). The moving party "should prevail [on a motion to dismiss] only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation signals omitted).

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Id.* at 1950.

## IV.  **DISCUSSION**

Chase argues that Plaintiffs' claims cannot proceed in this court because they relate to alleged acts and omissions of WaMu before it failed and was taken over by the FDIC.  Chase explains that pursuant to the P&A Agreement under which Chase purchased the mortgage loan at issue in this action, Chase did not did not assume any borrower claims against WaMu such that Plaintiffs cannot assert claims against Chase based on the conduct of WaMu.

Chase's argument is not new, and courts have framed it as raising

either a Rule 12(b)(1) motion asserting lack of subject matter jurisdiction, or a Rule 12(b)(6) motion that the borrower cannot assert a claim upon which relief can be granted.  In this Circuit, it appears that Chase's argument is best viewed as raising the court's jurisdiction.  *See Resolution Trust Corp. v. Midwest Federal Sav. Bank of Minot*, 36 F.3d 785, 790-91 (9th Cir. 1993).  Based on the following, the court finds that it does not have jurisdiction over Plaintiff's claims against Chase to the extent they are based on WaMu's conduct, and even if it did, such claims should be dismissed for failure to state a claim.  The court finds, however, that Plaintiffs' claim seeking rescission still stands.

**A.     Rule 12(b)(1) Analysis**

Applying Rule 12(b)(1), courts have found that a borrower's claims -- to the extent based on conduct by a failed institution that has been taken over by the FDIC -- is subject to the administrative claims process outlined in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").

FIRREA outlines a mandatory administrative process for claims made against the assets of a failed depository institution that is in FDIC receivership, and "[n]o court has jurisdiction over the claim until the exhaustion of this administrative process." *Intercontinental Travel Mktg. v. FDIC*, 45 F.3d 1278, 1282 (9th Cir. 1994); *see also Henrichs v. Valley View Dev.*, 474 F.3d 609, 614

(9th Cir. 2007). Specifically, 12 U.S.C. § 1821(d)(13)(D) provides:

> Limitation on judicial review. Except as otherwise provided in this subsection, no Court shall have jurisdiction over-
>
> (i) any claim or action for payment from, or any action seeking determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

In other words, § 1821(d)(13)(D) "strips all courts of jurisdiction over claims made outside the administrative procedures of [FIRREA]. . . . The statute bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is 'susceptible of resolution through the claims procedure.'" *Resolution Trust Corp.*, 36 F.3d at 791 (quoting *Henderson v. Bank of New England*, 986 F.2d 319, 320-21 (9th Cir. 1993)).

Courts have extended this bar to judicial review to claims brought against not only the failed institution and/or the FDIC, but also to claims brought against the subsequent purchaser. *See Caires v. J.P. Morgan Chase Bank*, --- F. Supp. 2d. ----, 2010 WL 3941841, at *5, 7-9 (D. Conn. Sept. 30, 2010); *Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 3168390, at *5 (N.D. Cal. Aug. 10, 2010) (finding that the court did not have jurisdiction to determine claims against Chase

because they relate to WaMu's misconduct); *In re Shirk*, 437 B.R. 592, 601-02 (Bkrtcy. S.D. Ohio 2010) (finding that FIRREA bars claims against Chase).

*Caires* came to this conclusion by considering FIRREA's grant of power to the FDIC and the effect of the FDIC's transfer of assets (but no liabilities) to a subsequent purchaser. Specifically, *Caires* explained that the claims exhaustion requirement in FIRREA reflects the FDIC's power "to determine which assets and liabilities of a failed bank are to be sold and transferred, and which assets it should keep." 2010 WL 3941841, at *7. This flexibility granted to the FDIC "'facilitates the sale of a failed institution's assets (and thus helps to minimize the government's financial exposure) by allowing the [FDIC] to absorb liabilities itself and guarantee potential purchasers that the assets they buy are not encumbered by additional financial obligations.'" *Id.* (quoting *Payne v. Security Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991)). *Caires* concluded that "[a]bsent a transfer of liability by the FDIC and assumption of liability by a subsequent purchaser, such as Chase, the liability remains with the FDIC and [is] subject to the claim exhaustion procedures." *Id.* Because the P&A Agreement provides, among other things, that Chase does not assume any liability associated with borrower claims "related in any way to any loan or commitment made by [WaMu] prior to failure," *Caires* found that liability for WaMu's actions remains

with the FDIC and is therefore subject to the claim exhaustion procedure. Accordingly, *Caires* lacked subject matter jurisdiction over the borrower's claims against Chase because those claims were premised on WaMu's actions. *Id.* at *9.

The court agrees with this reasoning -- to the extent that Plaintiffs allege claims against Chase for WaMu's conduct, liability for those claims remain with the FDIC and are therefore subject to FIRREA's administrative claims process. As such, the court does not have jurisdiction over these claims.

In opposition, Plaintiffs argue, among other things,[3] that the court should treat their action as raising affirmative defenses to Chase's nonjudicial foreclosure on the subject property, and affirmative defenses are not subject to FIRREA's administrative exhaustion requirement. *See* Pls.' Supplement at 3. While it is true that "§ 1821(d)(13)(D) does not divest a district court of jurisdiction over an affirmative defense," *Resolution Trust Corp.*, 36 F.3d at 793, this action does not constitute an affirmative defense.

Specifically, in determining whether Plaintiffs raise claims subject to § 1821(d)(13)(D) or affirmative defenses over which this court has jurisdiction,

---

[3] Plaintiffs also offered a number of arguments in opposition, all of which by and large ignore FIRREA and the P&A Agreement. For example, Plaintiffs argue in conclusory fashion that an assignee is fully liable for TILA violations of the assignor, and that because the FDIC can be held liable for TILA violations, Chase as its assignee can also be found liable. Pls.' Opp'n ¶¶ 4, 8. While perhaps true in some cases, that generality does not apply to these circumstances in light of FIRREA and the A&P Agreement.

11

> [the] court must look beyond the nomenclature of a request for relief to ascertain whether it is a true affirmative defense or is, in actuality, a claim requiring exhaustion as a prerequisite to jurisdiction. . . . The germane question is whether the remedy sought by a party, regardless of its label, is encompassed by § 1821(d)(13)(D), that is, whether the assertion is in reality a claim against the assets or actions of the failed institution [or receiver].

*Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264-65 (11th Cir. 1999); *see also Resolution Trust Corp.*, 36 F.3d at 791 (finding that fact that party labeled response as "counterclaim" did not bar the court from determining whether it raised an affirmative defense). Claims seeking payment from the assets of a failed institution and/or seeking a determination of rights as to those assets are clearly not affirmative defenses, but rather claims subject to FIRREA's administrative process. *Am. First Fed., Inc.*, 198 F.3d at 1263-65; *see also Resolution Trust Corp.*, 36 F.3d at 791; *Nat'l Union Fire Ins. v. City Sav.*, 28 F.3d 376, 393 (3d Cir. 1994); *Cf. Bolduc v. Beal Bank, SSB*, 167 F. 3d 667, 672 (1st Cir. 1999) (finding that action to prevent foreclosure was not a claim seeking "payment" from institution subject to FIRREA's administrative claims process). Plaintiffs are seeking damages from Chase, which falls squarely within § 1821(d)(13)(D)'s bar to judicial review of "any claim or action for payment from, or any action seeking determination of rights with respect to, the assets [of

the failed institution]." Accordingly, the court rejects Plaintiffs' assertion that this action should be treated as an affirmative defense over which this court would have jurisdiction.

Turning to the substance of Plaintiffs' claims, as presently alleged, the bulk of Plaintiffs' claims against Chase are based on alleged misconduct by WaMu such that the court does not have jurisdiction over these claims. While Plaintiffs assert that Chase has violated TILA by failing to respond to Plaintiffs' rescission notice, *see* Pls.' Opp'n ¶ 5, the Complaint does not include such a claim, and indeed, it appears that the Complaint was filed on the same date that Plaintiffs provided Chase notice of rescission. *See* Compl. ¶ 17.

The court does find, however, that it has subject matter jurisdiction over Plaintiffs' claim for rescission. A TILA claim for rescission may be brought "against any assignee of the obligation." *See* 15 U.S.C. § 1641(c). Chase is the current assignee of the mortgage loan at issue in this action, and the FDIC's retention of the liabilities created by WaMu does not change Chase's status as assignee. *See King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 246 (D. Mass. 2009). To find otherwise would mean that Plaintiffs must seek rescission through the administrative FIRREA process against the FDIC even though Chase, and not the FDIC, holds the mortgage. Such requirement would serve no purpose but to

frustrate the borrower in seeking relief.

The court therefore DISMISSES Plaintiffs' claims against Chase, except for Plaintiffs' TILA rescission claim.

**B.     Rule 12(b)(6)**

Alternatively, even if the court has jurisdiction over Plaintiffs' claims, the court finds that these claims fail under Rule 12(b)(6) to the extent based on WaMu's conduct.

Under a Rule 12(b)(6) analysis, courts have interpreted the P&A Agreement to mean that Chase is shielded from liability for borrower claims because liability for such claims remains with the FDIC. Based on Article 2.5 of the P&A Agreement -- providing that Chase does not assume any liability associated with borrower claims related to WaMu's conduct -- courts have found "that Chase became a successor to [WaMu] by executing the P&A Agreement; the P&A Agreement governs the status of Chase as successor; and Article 2.5 of the P&A Agreement establishes that Chase did not assume liability for borrowers' claims related to loans made by [WaMu] prior to September 25, 2008." *McCann v. Quality Loan Serv. Corp.*, --- F. Supp. 2d ----, 2010 WL 3118313, at *3 (W.D. Wash. July 21, 2010) (collecting cases and adopting rationale); *see also Dubois v. Washington Mut. Bank*, 2010 WL 3463368, at *2 (D.D.C. Sept. 3, 2010)

(dismissing claims against Chase pursuant to Rule 12(b)(6)); *Jones-Boyle v. Washington Mut. Bank, FA*, 2010 WL 2724287, at *8 (N.D. Cal. July 8, 2010) (same); *see also Aragon v. FDIC*, 2010 WL 331907, at *1 (D. Utah Jan. 28, 2010) (citing *Grealish v. Washington Mut. Bank*, 2009 WL 2170044 (D. Utah July 20, 2009) (same)); *Cf. Rosenfeld v. JP Morgan Chase Bank, N.A.*, --- F. Supp. 2d ---, 2010 WL 3155808, at *4 (N.D. Cal. Aug. 9, 2010) (finding that the plaintiffs' claims must be brought against the FDIC as opposed to Chase). These courts have generally recognized, however, that the P&A Agreement does not prevent claims based on Chase's conduct that occurred after September 25, 2008. *See, e.g.*, *McCann*, 2010 WL 3118313, at *3.

Courts have not uniformly addressed, however, what effect the P&A Agreement has on a borrower's claim for rescission pursuant to TILA. *See* 15 U.S.C. § 1641(c) (providing that "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation"). Some courts have simply dismissed the rescission claim along with the other claims, *see Rosenfeld*, 2010 WL 3155808, at *4, while other courts have found alternative bases to dismiss this claim. *See, e.g.*, *Hintz v. JP Morgan Chase Bank*, 2010 WL 4220486, at *4 (D. Minn. Oct. 20, 2010) (dismissing claim for rescission where property was sold before plaintiff exercised

right to rescind); *McCann*, 2010 WL 3118313, at *4 (finding that claim for rescission was time-barred); *Jones-Boyle*, 2010 WL 2724287, at *8-9 (rejecting that the equitable remedy of rescission is barred by the terms of the P&A Agreement, but dismissing claim on another basis); *Moldenhauer v. FDIC*, 2010 WL 1064422, at *2 (D. Utah Mar. 18, 2010) (dismissing TILA rescission claim on alternative basis).

   A third group of courts have allowed the rescission claim to stand, reasoning that the P&A Agreement does not insulate a subsequent purchaser such as Chase from a rescission claim because "TILA's rescission remedy is exercisable against the holder of the asset, not the retainer of the liability." *Danilyuk v. JP Morgan Chase Bank, N.A.*, 2010 WL 2679843, at *5 (W.D. Wash. July 2, 2010) (quoting *King*, 672 F. Supp. 2d at 246); *see also Wilbourn v. Advantage Fin. Partners, LLC*, 2010 WL 1194950, at *6 (N.D. Ill. Mar. 22, 2010) (holding that TILA rescission claim could be brought against a subsequent assignee of the plaintiff's mortgage); *Miller v. Cal. Reconveyance Co.*, 2010 WL 2889103, at *6 (S.D. Cal. July 22, 2010). As one court has explained:

> A transaction is an assignment even if related duties or liabilities are not transferred. Just because liabilities are retained by the transferor does not mean the transferee is not an assignee. Under TILA, it is the **assignee** who is subject to the consumer's statutory right to rescind the loan transaction. Section 1641(c) expressly states that

> the rescission right is available against "any assignee of the obligation." Having acquired the rights to the loan transaction, Chase is the current "assignee" of the promissory note and mortgage for the purposes of 15 U.S.C. § 1641(c). The fact the FDIC has retained the related liabilities does not alter Chase's status.

*King*, 672 F. Supp. 2d at 248.

Plaintiffs' claims against Chase, based on WaMu's alleged misconduct, fail to state a claim because the FDIC transferred to Chase the assets only -- and not the liabilities -- stemming from Plaintiffs' mortgage loan. The court further agrees with those courts that find a borrower may nonetheless allege a rescission claim against the assignee such as Chase -- to find otherwise would leave a borrower with no rescission remedy, a result clearly not contemplated by § 1641(c).[4]

The court therefore DISMISSES all of Plaintiffs' claims except for their TILA claim seeking rescission.

## V. CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part

---

[4] In a footnote in its Reply, Chase argues that summary judgment should be granted as to Plaintiffs' TILA rescission claim because Plaintiffs have not tendered the entire loan principal back to Chase. Chase Reply at 2 n.1. The court will not address this argument raised for the first time on Reply. *See, e.g.*, *Hi-Tech Rockfall Const., Inc. v. Cnty. of Maui*, 2009 WL 529096, at *18 n.9 (D. Haw. Feb. 26, 2009) ("Local Rule 7.4 provides that '[a]ny arguments raised for the first time in the reply shall be disregarded.'"); *Coos Cnty. v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).

Chase's Motion to Dismiss. Plaintiffs' TILA claim seeking rescission remains. Plaintiffs are further GRANTED LEAVE to file a first amended complaint by December 13, 2010 for the limited purpose of alleging any claims (if possible) based on conduct by Chase after September 25, 2008. Given the analysis above, however, the court finds that granting Plaintiff leave to allege claims against Chase for WaMu's conduct that occurred prior to September 25, 2008 would be futile, and thus any amended complaint may not include such allegations.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 30, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Rundgren et al. v. Washington Mutual Bank, F.A., et al.*, Civ. No. 09-00495 JMS/KSC, Order Granting in Part and Denying in Part Defendant JP Morgan Chase, N.A.'s Motion to Dismiss, Doc. No. 18